# Murphy v. The State.

# Barnard v. The State.

*Indictment for Gaming.*

1. *Jurisdiction of the mayor of Huntsville, in cases of misdemeanor.* The mayor of the city of Huntsville, under the provision of the charter which confers on him, *within the corporate limits*, all the powers and jurisdiction of a justice of the peace, has no jurisdiction of misdemeanors committed in Madison county, under the act approved February 8, 1877.

APPEAL from Madison County Court.
Heard before Hon. WM. RICHARDSON.
The facts appear in the opinion.

MESSRS. DAY, JONES, COLEMAN, HUNDLY and HUMES, for appellants.

H. C. TOMPKINS, Attorney-General, *contra*.

STONE, J.—Most of the questions raised by these records were considered and decided in Sale against the State at the present term. We will not restate nor reconsider what we there said.

In the present cases there were pleas of former convictions for the same offenses, and payment of the fines assessed in these cases, and of the costs. There were demurrers to these pleas, which were sustained. The plea was, that theretofore, on the 12th day of June, 1881, the defendant was prosecuted, arrested, tried, convicted and fined for the identical offense charged in this prosecution, "before Thomas W. White, mayor of the city of Huntsville, and *ex officio* justice of the peace of said county and State." A transcript of the proceedings and conviction before the mayor is made part of each of said pleas. From them it appears that the warrant against Murphy was sued out by one Henry Barnard, and the prosecution against Barnard was sued out by one Jerre Murphy. Each defendant appeared before the mayor on the very day on which the warrant was sued out, each pleaded guilty, and the mayor assessed a fine against each of twenty dollars. The minimum fine in such cases is fixed by statute at fifty dollars. The warrants in these cases were sued out twelve days before the warrants were issued by the mayor, but the arrest under the warrant from the County Court was made after the conviction before the mayor.

Had the mayor jurisdiction of the cases? The charter of the city of Huntsville was approved by the Governor March, 3, 1870.—Pamph. Acts 1869–70, p. 412. In the 12th section of that charter it is enacted "that the mayor shall possess, within the corporate limits, all the powers and jurisdiction of a justice of the peace, in civil and criminal cases." At that time justices of the peace had no jurisdiction for the trial of gaming cases. By the statute, approved February 8, 1877—Pamph. Acts 1876–7, p. 197—it was enacted "that justices of the peace, and notaries public having like powers, in the counties of Lee, *Madison* [and some others] shall have original jurisdiction concurrent with the Circuit Court of all misdemeanors committed in said counties." These are the statutory provisions, under which it is claimed the mayor had jurisdiction to try the cases. These are insuperable obstacles in the way of the construction claimed. "Justices of the peace have original jurisdiction within their respective counties."—Code of 1876, § 757. The mayor of Huntsville possesses the powers and jurisdiction of a justice of the peace, only within the corporate limits of the city. If we adopt the construction contended for, it forces us to enlarge the criminal jurisdiction of the mayor, from the corporate limits to

which the charter confined it, to the body of the county; for the act confers jurisdiction of all misdemeanors committed in said counties. It leads to another singular result. While it confers criminal jurisdiction throughout the whole county, it makes no provision for enlarging the civil jurisdiction. That remains as it was first conferred. We cannot think the legislature intended, in this indirect way, to effect such radical change in the territorial area, over which the mayor could exercise jurisdiction.

Should it be contended that, because the city charter of Huntsville confers on the mayor the powers and duties of a justice of the peace within the corporate limits, the effect of the act of February 8, 1877, is to clothe him with " original jurisdiction concurrent with the Circuit Court, of all misdemeanors committed," not in the county, but within the corporate limits of Huntsville, I confess myself a stranger to all rules of construction, by which such conclusion can be reached. The statute alone confers the jurisdiction, and without the statute, justices have no such jurisdiction. The jurisdiction conferred is " all misdemeanors committed in said counties." What words in the statute authorize the interpretation, that similar jurisdiction was conferred on another magistrate, not specially mentioned, but to be exercised only in a fractional part of the county, less probably than one per cent. of the entire territorial area? The statute says, all misdemeanors committed in the county. The supposed interpretation supplies the words, ' and the mayor of Huntsville shall have original jurisdiction concurrent with the Circuit Court of all misdemeanors committed within the corporate limits of the city of Huntsville.' Can construction supply so important a clause as this? Does not the necessity for resorting to so strained a construction, demonstrate that the legislature never intended to confer this enlarged jurisdiction on the mayor?

But if the construction contended for were correct, it would not relieve the defendants in the present cases. The pleas of former conviction, to which demurrers were sustained, would still fail to show the mayor had jurisdiction of the cases. In the affidavits upon which the mayor issued his warrants, the charge is, that the defendant, before the filing of the affidavit, did in the county of Madison, bet at a game of cards. On this charge the defendants were arrested, tried, pleaded guilty, and were fined. It is neither pleaded, nor any where shown in the transcript made part of the plea, that the betting took place within the corporate limits of Huntsville, and hence the proceedings before the mayor, even on the construction of the statute last above supposed, fails to

show he had jurisdiction to try the causes. The demurrers were rightly sustained.

There is another argument against the construction claimed, almost as convincing as that mentioned above. The jurisdiction is expressly conferred on justices of the peace and *notaries public having like powers.* If, as the argument asserts, the phrase, 'justices of the peace,' is broad enough to embrace the mayor, because he possesses the jurisdiction of a justice, why was it not considered comprehensive enough to include notaries public, who, to the extent provided in the statute, certainly have as large jurisdiction as the mayor could claim? Why name notaries, and omit the mayor, if both were intended to be embraced? *Inclusio unius est exclusio alterius.*

We feel it our duty to call attention to another phase of this statute, which may become a subject of contention. The language of the Constitution—article VI, section 26—under which notaries public, with power ' to hear and determine ' are appointed, is as follows : " The Governor may appoint one notary public for each election precinct in counties, and one in each ward of cities of over five thousand inhabitants, who, in addition to the powers of notary, shall have and exercise the same jurisdiction as justices of the peace within the precincts and wards for which they are respectively appointed." Section 1325 of the Code speaks of the appointment of notaries of both classes—defines their term of office, and characterizes them as notaries public for each county. We have not examined, but suppose notaries with the jurisdiction of justices, are appointed for particular precincts and wards. The act we have been construing confers jurisdiction of all misdemeanors committed in said counties. Does this enlarge the local jurisdiction of the notary, or can it do it? We ask these questions, without intending to answer them. They might have been considered in *Carroll v. The State*, 58 Ala. 396, but they were not, in the form above presented. As we have said, it is not our purpose to intimate an opinion upon them at this time.

The fine imposed by the mayor in each of these cases was twenty dollars. The minimum fixed by statute for the offense here charged—betting at a game of cards, &c.—is fifty dollars.—Code of 1876, § 4209. If the mayor had had jurisdiction, he should not have imposed a fine of less than fifty dollars.

The County Court committed no error in allowing the amendment of the charge or statement.—*Blankenshire v. The State*, at the present term.

Affirmed.