## Douglass v. The State.

### Bastardy Proceeding.

1. *Bastardy proceeding; jurisdiction of notary public and ex officio justice of the peace.*—Under the provision of the Constitution, which confers on the Governor the authority to "appoint one notary public for each election precinct in counties and one for each ward in cities of over five thousand inhabitants, who, in addition to the powers of notary, shall have and exercise the same jurisdiction as justices of the peace within the precincts and wards for which they are respectively appointed," (Const., Art. VI, § 26), a person appointed by the Governor as such notary, is clothed with whatever civil or criminal jurisdiction a justice of the peace may exercise; and a proceeding in bastardy, which is commenced by a complaint being properly made before and entertained by a notary public having jurisdiction of a justice of the peace under an appointment of the Governor, is legally instituted.

2. *Same; same; formation of issue for trial.*—In a bastardy proceeding instituted by a complaint being made before a notary public having jurisdiction of justice of the peace, after the case had reached the circuit court and the defendant is personally present, there is no error in the court requiring him to join in the issue which the State requires to be formed, though the warrant under which he was arrested had been stricken from the file.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. THOMAS R. ROULHAC.

This is a bastardy proceeding, which was commenced by affidavit being made by one Rutha Pearsall before one James P. Murdock, who was a notary public and *ex officio* justice of the peace for Colbert county. Upon this affidavit a warrant of arrest was issued; and upon the hearing, the justice of the peace considered that there was probable cause to believe the defendant guilty, and, therefore, bound him over to the circuit court.

[Douglass v. The State.]

The defendant, before entering upon the trial, when the case was called for trial in the circuit court, moved the court to quash and strike from the files the alleged warrant, or writ of arrest, upon the ground "that it was a fugitive paper, having neither been written nor signed by the justice of the peace who heard the cause before the affidavit was made and proceedings were commenced, nor until the charge of bastardy had been investigated by him, and the defendant committed to jail, in default of bail bond by the said justice, after which and after the papers had been sent to this court, the said justice had filed said warrant. with the papers in said cause in this court." This motion was granted by the court.

The defendant then objected to being placed upon his trial without a warrant issued by the justice of the peace, but the court overruled such objection, and the defendant excepted to such ruling. The defendant then objected to being tried upon the affidavit made before the said justice of the peace alone, but the court overruled the objection, and to this ruling the defendant excepted. The defendant then moved the court to discharge him upon the ground that the proceedings were illegal, and further that the court had no jurisdiction to try the defendant upon such process alone, but the court overruled his objections and to this ruling the defendant excepted. The court then, against the objection of the defendant excepted, and directed that an issue be made up by the State, alleging that the defendant was the real father of the child of Rutha Pearsall, on which the defendant took issue. In putting the case for the State to the jury, the solicitor for the State undertook to read the affidavit of Rutha Pearsall made before the justice of the peace to the jury, to the reading of which the defendant objected. The court overruled such objection, and to this ruling the defendant excepted. The solicitor then read the affidavit to the jury, and the trial proceeded upon the issue joined as aforesaid.

JAMES JACKSON, for appellant, cited Code of 1886, § 4842; *Vann v. Adams*, 71 Ala. 475; *State v. Woodson*, 99 Ala. 201; *Williams v. State*, 29 Ala. 9.

WILLIAM C. FITTS, Attorney-General, for the State.

[Douglass v. The State.]

BRICKELL, C. J.—Proceedings in bastardy are statutory, originating before a justice of the peace, and are instituted by the complaint of a single woman that she is pregnant with or has been delivered of a bartard child, in the county in which the complaint is made, and must accuse a particular person of being the father of such child—this is the inception of the proceedings, and without it there can be no further movement in the procedure the statutes prescribe. The complaint having been made, it is the duty of the justice to issue a warrant for the arrest of the accused, and on his arrest to inquire whether there is probable cause to believe him guilty. If on such inquiry, the justice finds probable cause, the accused is held to appear before the circuit court, where, if he demands it, an issue is made up, to ascertain whether he is the real father of the child.—Cr. Code of 1886, §§ 4842-51 ; Cr. Code of 1896, §§ 4381-90.

The complaint in this case, was in writing, conforming in all respects to the statute, and verified before a notary public of the appointment of the Governor, having the jurisdiction of a justice of the peace ; and the first insistence of the appellant is, that by the terms of the statute, an elective justice only could entertain the complaint. It is not doubted that the proceeding is in its essence judicial, and that the justice exercises jurisdiction as distinguished from merely ministerial or administrative power. The complaint is the inception of the proceedings', and before issuing a warrant for the arrest of the accused, the justice must determine the sufficiency of the complaint. The warrant having issued, the justice must hear evidence, and from the evidence determine whether there is probable cause to believe the accused guilty. There is every element of *jurisdiction.* as the term is applied to courts and judicial officers—the power to hear and decide a particular controversy ; and there is more, a correspondence to the statute which authorizes justices of the peace to inquire preliminarily into the commission of criminal offenses. The Constitution (Art. VI, Sec. 26), confers on the Governor authority to "appoint one notary public for each election precinct in counties, and one for each ward in cities of over five thousand inhabitants, who, in addition to the powers of notary, shall have and exercise the same jurisdiction as justices of the peace within the pre-

cincts and wards for which they are respectively appointed." The interpretation, construction and operation of this clause of the Constitution, has been the subject of frequent decisions in this court; and it is settled, that while the notaries of the appointment of the Governor do not succeed to statutory power conferred on justices of the peace—power not pertaining to their jurisdiction, though not particularly nominated in the statute—by force of the Constitution they are clothed with whatever of jurisdiction, civil or criminal, a justice of the peace may exercise.—*Carroll v. State*, 58 Ala. 396 ; *Griffin v. Appleby*, 69 Ala. 409 ; *Vann v. Adams*, 71 Ala. 475 ; *Rice v. Watts*, *Ib.* 593 ; *Harper v. State*, 109 Ala. 66. The distinction is between mere power not in its nature judicial, and jurisdiction. In *Griffin v. Appleby, supra*, it was held that the grant of jurisdiction to notaries public, appointed by the Governor, to have and exercise it, is as plenary as the grant of jurisdiction to justices of the peace. It was said: "The grant of jurisdiction to the one is not distinguishable from the grant to the other—within the precinct or ward for which he is appointed, the notary is, according to the words of the Constitution, 'to have and exercise the same jurisdiction as justices of the peace.' The mode in which the justice of the peace should exercise the jurisdiction conferred upon him, or the process he should employ to render the jurisdiction effectual, the Constitution does not prescribe. That is left to legislative regulation, and, prior to the adoption of the Constitution, had been the subject of legislation, and a system established, remaining of full force, because not repugnant to, or inconsistent with, the provisions of the Constitution. The statutes prescribing the mode in which the jurisdiction shall be exercised, and the process which shall be employed, refer in words only to justices of the peace, because enacted and existing prior to the constitutional grant of the same jurisdiction to notaries public. But these statutes open and take in the notaries public appointed to have and exercise the jurisdiction of justices of the peace. Otherwise, in the absence of legislation incorporating into these statutes the words *notaries public*, the grant of jurisdiction by the Constitution would be barren—its energy and vitality dependent upon the legislative will. The constitutional grant

is plenary, and whatever is necessary to make it effec-
tual must be supplied by the common law, and by the
statutes pertaining to the subject-matter.'' There is no
doubt that the complaint in this case was properly made
before, and entertained by the notary public, and the
proceedings were thereby legally instituted.

The cause having reached the circuit court, and the
defendant being personally present, there was no error
in requiring him to join in the issue the statute requires
to be formed.—*Hanna v. State*, 60 Ala. 100.

· We find no error in the record, and the judgment is
affirmed.