AtkiNSON, J.,
delivered the opinion of the court:
The Postmaster-General transmits to the court under Be-visecl Statutes, section 1063 and section 2 of the act of March 3, 1883, for adjudication, the claim of a letter carrier in the post-office at Washington, D. C., for work alleged to have been performed by him in excess of eight hours per day.
*480 The claimant voluntarily appears and files his petition herein, averring in substance that he was appointed February 9, 1909, a letter carrier in the post-office at Washington, D. C., at a salary of $600 a year; that during the week ending May 2, 1909, he was actually and necessarily employed in excess of eight hours a day on some days' and less than eight hours per day on other days; that by virtue of the act of May 24, 1888 (25 Stat. L., 157), he became entitled to extra pay for all time he was employed in excess of eight hours a day, and demands judgment accordingly.
Thereafter, counsel for the National Association of Letter Carriers, by leave of the court, appeared, filed a brief, and participated in the oral argument of the case.
As the claim is one which the Postmaster-General had the right to transmit under lievised Statutes, section 1063, without reference to the amount involved in the particular case, and the claimant has voluntarily appeared and filed his petition, asking that his claim be adjudicated to judgment, as he might have done independently of such reference, the court will disregard the reference under section 2 of the act of March 3, 1883, which looks only to the findings of fact for the guidance of the department.
To the petition the defendants file a demurrer on the ground/'that the petition does not allege facts sufficient to constitute a cause of action,” in this that the act of May 24, 1888, sufra, granting to letter carriers extra pay in proportion to their salaries when employed in excess of eight hours per day, was amended by the proviso in the appropriation act of June 2, 1900 (31 Stat. L., 252, 257), making appropriations for the support of the Post-Office Department, which reads:
“ For pay of letter carriers in new offices entitled to free-delivery service under existing law, sixty thousand dollars: Provided, That letter carriers may be required to work as nearly as practicable only eight hours on each working day, but not in any event exceeding forty-eight hours during the six working days of each week; and such number of hours on Sunday, not exceeding eight, as may be required by the needs of the service; and if a legal holiday shall occur on any working day the service performed on said clay, if less than eight hours, shall be counted as eight hours without regard to the time actually employed.”
*481 The plaintiff’s contention is that the proviso was temporary legislation contemporaneous only with the appropriation carried by the act, and such was the opinion of the Assistant Attorney-General for the Post-Office Department and upon which the department has since acted. That is to say, the department in practice applied the proviso only during the fiscal year of the appropriation ending June 30, 1901.
He further maintains that even if held to be permanent legislation and still in force, the proviso neither modifies nor repeals the prior eight-hour law, which is still effective and allows additional pay to carriers for all time spent at work in excess of eight hours in any one day.
The defendants contend that the proviso is permanent and independent legislation and should be applied generally to all letter carriers.
It is clear that if the proviso is temporary, it applied only to “ letter carriers in new offices entitled to free-delivery service under existing law,” but such was not the basis of the opinion of the Assistant Attorney-General.
The Postmaster-General in his report for 1898 (House document, vol. 13, 55th Cong., 3d sess., p. 151) stated that he had met with insurmountable trouble in applying the eight-hour per day law to letter carriers; that part of the time carriers are not required to work the full eight hours a day, and yet some days when the mail was heavy they could not deliver it within eight hours, and on such days overpay was demanded because it was necessary for carriers to work more than eight hours to complete their work. As a remedy he suggested six days’ work of forty-eight hours for each week of six working days, and as many hours on Sundays, not exceeding eight, as the exigencies of the service may require. His suggestion, however, was not heeded by the Congress.
Again, in 1899, he made the same recommendation, which was likewise unheeded. Still again, in 1900, he renewed the recommendation, the result of which was the proviso above quoted, and the Post-Office Department issued the necessary rules and regulations to carry the act into effect.
The question is, Did the Congress intend said enactment to be a temporary or a permanent amendment to the eigM- *482 hour leuw? This is the first case in which an opportunity has arisen to obtain a judicial construction of said act by this or any other court.
In the construction of a statute a proviso is generally intended to restrain or qualify some preceding matter; but if it is apparent from the words employed that the Congress intended or designed a more comprehensive meaning, it may be diverted from its usual functions and enlarge the general scope of an act. In fact, it may, if consonant with legislative intention, assume the functions of an independent enactment.
Sutherland on Statutory Construction, section 223, says: “ The intention of the lawmaker, if plainly expressed, must have the force of law, though it may be in the form of a ' proviso. The intention expressed is paramount to form.” The rule is more freely stated by the same author in section 218, wherein he says:
“ Words expanded or limited to accord with intent. It is indispensable to a correct understanding of a statute to inquire first what is the subject of it; what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to * all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace, it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intention.”
The purpose and scope of a proviso is well defined by the Supreme Court of Alabama in Carroll v. The State (58 Ala., 401): “ A proviso,” says Baldwin, J., “ in deeds and laws is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that the one shall not operate, or the other be exercised, unless in the case provided.” (Voorhees v. Bank of U. S., 10 Pet., 471.)
In Wayman v. Southard (10 Wheat., 30) it was held that “ The proviso is generally intended to restrain the enacting clause, and to except something which would otherwise have been within it, or in some measure to modify the enacting clauses.”
*483 Another purpose for which it is often used is to exclude some possible misinterpretation of the general words of the enacting clause, as extending to cases not intended to be brought within its purview. (Minis v. U. S., 15 Pet., 423.) However, it does not necessarily follow because the term 'provided is used that that which may succeed it is a proviso, though that is the form in which an exception is generally made to, or a restraint or qualification imposed upon, the enacting clause. It is the matter of the succeeding words, and not the form, which determines whether it is or is not a technical proviso. (Smith v. The People, 47 N. Y., 330; Lafitte v. United States, 43 C. Cls. R., 166.)
In the case of Henry v. United States (27 C. Cls. R., 142), in considering the question of a proviso in an act of Congress, the court said: “A proviso is properly something en-grafted upon a preceding enactment for the purpose of taking special cases out of the general enactment; but the term ‘ provided ’ does not necessarily mean that that which follows is a proviso in its technical sense; it is the matter and not the form which determines. The long practice of Congress in enacting general legislation by provisos in appropriation acts must be recognized by the judiciary in the interpretation of such statutes.” See also Telephone Company v. Manning, 186 U. S., 238; Georgia Banking Company v. Smith, 128 U. S., 174, 181; United States v. Whitridge, 197 U. S., 135; United States v. Falk, 204 U. S., 143, 149; Prindle v. United States, 41 C. Cls. R., 8; Hadden v. United States, 5 Wall., 107.
Plaintiff's counsel, after citing a number of authorities which we have examined and do not consider material in the case at bar, insists that if the appropriation act of June 2, 1900, were intended to be general it would contain the word “ hereafter,” so as to make it extend to and become a restriction upon the expenditures of appropriations for the maintenance of the letter carriers’ service in the future. We do not agree with this contention, for the reason that the proviso was evidently intended as a permanent remedial amendment of the prior eight-hour law; and, under the well-settled rule of construction, therefore, both acts, although passed upon *484 different dates, must be construed in pari materia and their provisions compared and harmonized as though constituting one act. If not susceptible of such harmonious construction, both acts must be made to operate, as far as possible, consistently with the evident intent of the latest enactment. (Sutherland on Statutory Construction, secs. 283, 288; United States v. Tyner, 11 Wall., 92.)
Furthermore, the clause, as we have already stated, on which the proviso is engrafted, together with the appropriation therein made, applies only to carriers at “ new offices entitled to free delivery; ” and if the proviso is to be treated as temporary, then it applies only to the class of carriers referred to and not to carriers generally. Certainly Congress did not intend to segregate the carriers at new offices and apply it only to them; and if not, then it applies to all carriers ; and if to all carriers, then the legislation was intended as permanent; and when read in the light of the mischief sought to be remedied, as pointed out by the Postmaster-General in his several annual reports, there can be no doubt but that the Congress, by the language used, intended the proviso as independent legislation, applicable alike to all carriers.
It is contended, however, that the departmental construction and practice preclude the court from so holding. True, the construction of a statute by those charged with its execution is entitled to great weight and should not be overruled without cogent reasons (United States v. Moore, 95 U. S., 763), but as the language of the proviso is clear and unambiguous, it needs no interpretation; and therefore the ruling and practice of the department, contrary to its clear import, can not be upheld to defeat the purpose of the Congress by its enactment. This principle was clearly determined by the Supreme Court in the case of the United States v. Temple (105 U. S., 97), which has since been followed by that and all other federal courts. Moreover, the so-called “ practical construction ” and all subsequent acts of the postal authorities relied , upon by claimant’s counsel to establish it, rest entirely upon the correctness of the construction placed upon the act of Congress by the Assistant Attorney-General, with which we do not agree.
*485 For the reasons given the demurrer must be sustained and the petition dismissed.
Booth, J., dissents.