# Schuessler *v.* Dudley.

*Bill in Equity by Surety on Tax Collector's Official Bond, to enforce Statutory Lien on Property of Deceased Principal.*

1. *Official bond of tax-collector ; subrogation of surety to rights of State or county against property of principal.*—A surety on the official bond of a defaulting tax-collector, paying the amount of his principal's default, is entitled, on general equitable principles, to be subrogated to the rights of the State or county, and to have the statutory lien created by the bond enforced for his indemnity, against his principal, co-sureties, and purchasers with notice ; and if he pays a judgment rendered against his principal and co-sureties, taking an assignment of it to himself, the statute (Code, § 3418) gives him the right to assert, "in law or equity, any lien or right against the principal debtor which the plaintiff could assert if the debt had not been paid."

2. *Same; lien of bond as against homestead.*—The lien created by the official bond of a tax-collector, as declared by statute (Code, § 403), extends to the homestead owned and occupied by him at the time of the execution of the bond, and is operative as against subsequent purchasers with notice. (CLOPTON, J., *dissenting.*)

APPEAL from Chilton Chancery Court.
Heard before the Hon. N. S. GRAHAM.

BRAGG & THORINGTON, for appellant.—1. In October, 1875, James A. Dudley, being tax-collector of Chilton County, executed his bond, with Moses Simmons and. others as sureties thereon. In May, 1877, said Dudley made default in the payment of county taxes, for the amount of which default the county, in 1878, recovered judgment against Dudley and his sureties. Execution was issued on this.judgment against Simmons, who paid it and took a transfer of the judgment to himself. This bill is filed to enforce that judgment against Dud-

[Schuessler v. Dudley.]

ley and the co-sureties with complainant on his bond, and against parties who had purchased property from Dudley after the execution of his bond. Two of these latter parties, Mrs. Callens and Mrs. Baker, defend on the ground that the property purchased by them respectively was, at the time of the purchase, the *homestead* of said Dudley, and could not be subjected to the debt or liability of Dudley. 2. Homestead exemptions under the Constitution apply only to liabilities arising out of contracts, and not from torts. The proof shows that Dudley owned the property purchased by Mrs. Baker, in 1876, and that it did not become his homestead till 1877, so that it became impressed with the lien of the bond before it became exempt as a homestead, if exempt at all.—See *Newbold v. Smart*, 67 Ala. 326. The liability of Dudley does not arise from the bond, but from his default and wrong. The bond is intended simply to indemnify the State against loss by the tortious act of the tax-collector.—*Meredith v. Holmes*, 68 Ala. 190 ; *Vincent v. The State*, 74 Ala. 274 ; Thompson on Homesteads, § 190. 3. In the United States, where a preference is given to the government, the principle has prevailed that a surety, on payment, shall be subrogated to the United States and to the preferences given to the government.—Dixon on Subrogation, pp. 120–1 ; *West v. Creditors*, 3 La. An. 529 ; *Dias v. Bonshand*, 10 Paige, 445 ; *Hunter v. U. S.*, 5 Peters, 182 ; 4 Randolph, 438.

J. M. FALKNER, WM. A. COLLIER, J. S. EDWARDS, and WATTS & SON, *contra*, cited Herman on Ex., § 297 ; *Cooper v. Galbraith*, 3 Wash. C. C. 546 ; *Conway v. Nolte*, 11 Mo. 74 ; *Robinson v. Garth*, 6 Ala. 208 ; *Lehman, Durr & Co. v. Alford*, 76 Ala. 526 ; *Knighton v. Curry*, 62 Ala. 404 ; *Green v. Marks*, 25 Ill. 221 ; 68 Ala. 190.

SOMERVILLE, J.—The defendant, Dudley, was tax-collector of Chilton county, and, in October of the year 1875, executed his official bond in such capacity, and in the form prescribed by statute, with Moses Simmons, the complainant's intestate, and others as sureties. In the years 1876 and 1877, Dudley, having collected a large amount of tax-money due the county, failed to pay over such funds to the county treasurer, within the time fixed by law, and thereby became a defaulter to the county on May 1st, 1877. A summary motion was instituted in the Circuit Court against Dudley and his sureties, in the name of Chilton county, and judgment was rendered against them in the following year, 1878, for the amount of such defalcation, with interest, damages, and costs—being

[Schuessler v. Dudley.]

about the sum of fourteen hundred dollars. This proceeding was taken under section 3396 of the present Code.

Simmons, as surety, paid this judgment, and it was assigned to him by the plaintiff in the judgment, Chilton County, pursuant to the requirement of section 3418 of the Code of 1876, which expressly preserves the full vitality of such judgments as against the principal debtor, in favor of the surety paying or satisfying them, under certain qualifications not affecting this case.

The present bill was filed by Simmons, the suit being afterwards revived in the name of his administrator, and its purpose is to enforce the lien created by statute in favor of the original plaintiff, for the benefit of the complainant, as a surety, against the tax-collector, the co-sureties on his bond, and certain alienees, of property fraudulently conveyed by such collector after the execution of his bond. It is provided by statute—and such was the law in force at the time of the giving of defendant's, Dudley's, bond—that "the bond of the tax-collector shall operate, *from its execution,* as *a lien* in favor of the State and county on the property of such tax-collector for the amount of any judgment which may be rendered against him in his official capacity for the State or county taxes, and on the property of his sureties from the date of his default." Code, 1876, § 403.

It has been settled by this court that where the surety of a tax-collector makes good the default of his principal, even before judgment rendered for such default, he is entitled to be subrogated, on equitable principles, to the rights of the State or county, and to have the lien of the bond, created by this statute in favor of the State or county, enforced for his own indemnity, against the principal, the co-sureties, and the purchasers from them, who have notice of the existence of such lien.—*Knighton v. Curry,* 62 Ala. 404. And the joinder of these various parties as co-defendants to such a bill has been decided not to render it objectionable on the ground of multifariousness.—*County of Dallas v. Timberlake et al.,* 54 Ala. 403. It can not in our opinion affect the equity of such a bill save to strengthen it, that the judgment rendered against the collector has been assigned by the plaintiff in it to the surety. The very purpose of the statute authorizing this assignment was to enlarge and not to diminish the surety's rights, at least against the principal debtor. It not only authorizes the assignee to use the name of the original plaintiff for its collection by the issue of execution against the principal ; but he may also " assert in law or equity any lien or right against the principal debtor which the plaintiff could assert, if the debt had not been paid."—Code, 1876, § 3418. This he may ob-

viously do in his own name, in a court of equity certainly, as was done in *Vanderveer v. Ware*, 65 Ala. 606.

These principles settle the general equity of the bill, as involving a subject-matter properly within the jurisdiction of a court of chancery, and show that the chancellor erred in its dismissal.

There is another question, however, presented by the record. Two of the defendants, Mrs. Callens and Mrs. Baker, are shown to be purchasers of lots which constituted a portion of the homestead of their co-defendant, Dudley, which was owned and occupied by him as such, at the time of the execution of his bond as tax-collector in October, 1875. It is not denied that they are chargeable with notice of the lien on the land, if by law it was fastened on the homestead. The question then is, whether the homestead of the principal debtor, the tax-collector, was subject to condemnation to satisfy this demand. Did the execution of the bond, under the influence of the statute, operate to fix the lien on property which is exempt from sale for ordinary debts, under the Constitution and laws of this State?

The rights of the complainants in this particular, as we have shown, are precisely commensurate with those of the original plaintiff in the judgment, the County of Chilton. As assignee of the county, he is empowered to "assert, in law or equity, any lien or right against the principal debtor, which the plaintiff could assert, if the debt had not been paid."— *Vanderveer v. Ware, supra;* Code, 1876, § 3418. This language of the statute is very broad and explicit, and can admit of but one interpretation. It puts the complainant in the shoes of the County of Chilton, and permits no defense against him which could not have been successfully urged against the original plaintiff, had there been no assignment to, or payment by the surety.

It is our opinion that the homestead exemption law is not operative against the present liability. The Constitution and statutes apply only to sales on execution, or other process from courts " for any *debt* contracted." It has no application to judgments based on torts, or liabilities in the nature of torts. Const., 1875, Art. X, Sec. 2; Code, 1876, § 2820. The past decisions of this court commit us fully to this construction. In *Meredith v. Holmes*, 68 Ala. 190, it was decided that a defendant's homestead was not exempt from levy and sale under execution on a judgment based on a recovery of damages in an action of trespass. In *Williams v. Bowden*, 69 Ala. 433, a like ruling was made as against a judgment recovered for a penalty given by statute against a mortgagee for failure to enter satisfaction of a mortgage, after its payment, pursuant

[Schuessler v. Dudley.]

to the requirement of section 2223 of the Code of 1876. And in *Vincent v. The State*, a claim of exemption was disallowed on a bill being filed by the State against a defaulting public officer, for the recovery of money belonging to the State, which he had converted to his own use. This ruling was based, not on any alleged prerogative of the State, but upon the broader ground that the conversion of the money was both a tort and a crime, and no exemption of property could be claimed or allowed against such a liability.

In *Whiteacre v. Rector*, (29 Gratt. 714), 26 Amer. Rep. 420, the Virginia Court of Appeals, under a constitutional provision precisely like our own, decided that a homestead exemption could not be claimed as against a fine due the State for a violation of its criminal laws. While this court, in *The State v. Allen*, 71 Ala. 543, admitted, *arguendo*, the probable correctness of this view as against the principal debtor, who was convicted and fined, its application to the sureties was denied on the ground that the confessed judgment for the fine was purely contractual as to them—a mere promise to pay money.

In *Kirkpatrick v. White*, 29 Penn. St. 176, a constable, against whom an execution was issued upon a judgment, obtained for negligence in failing to return an execution in another cause, was held not to be entitled to the benefit of the exemption laws.

There are many other decisions in various States analogous to the foregoing.—Thompson on Homesteads, §§ 380, 383.

The present liability, so far as the principal debtor is concerned, is in the nature of one *ex delicto*. It is not a mere suit on the tax-collector's bond, but a summary action for money presumptively converted, with interest, a penalty of ten *per cent.* damages, and costs added. It is a judgment for an official defalcation, not for "a debt contracted," within the meaning of the constitution, or the statutes, as much so as either an ordinary penalty, or a fine, for either of which an action of debt in mere form would lie.

The objection, that this result can only be reached by working out contribution among joint wrong doers, is without force. The tax-collector, who is the defaulter, is here the only wrong doer. While he has been guilty of an offense against the public revenue, which is made by statute either a misdemeanor or felony, according to the circumstances of the case, the sureties on his bond are chargeable with no such criminal dereliction. *Britton v. State*, 77 Ala. 202; Code, 1876, §§ 4265, 4266; 414. They have contracted with the county, and with each other, to make good this default, and out of these contractual relations, grows the jurisdiction of equity in this case. But the rights of

[Schuessler v. Dudley.]

the complainant, in the matter of exemptions, grows more particularly out of the statute and the assignment to his intestate, of the judgment recovered by the county of Chilton. Against this, as we have shown, there was no homestead exemption which could be lawfully claimed.

These views necessarily lead to a reversal of the decree of the chancellor, which is accordingly adjudged, and the cause is remanded, that further proceedings may be had in accordance with the principles announced in this opinion.

CLOPTON, J. (*dissenting.*)—The nature and importance of the question call for a brief statement of the reasons, which compel me to dissent from the conclusion, that the lien created by the official bond of the tax-collector attached to a homestead which he had sold and conveyed before suit on the bond.

Section 2 of article 14 of the constitution of 1868, which was in force at the date of the bond, provides, that any lot in a "city, town or village, with the dwelling and appurtenances thereon, owned and occupied by any resident of this State, and not exceeding the value of two thousand dollars, shall be exempted from sale, on execution, or any other final process from a court, for any debt contracted after the adoption of this constitution. Such exemption, however, shall not extend to any mortgage lawfully obtained, but such mortgage or other alienation of such homestead, by the owner thereof, if a married man shall not be valid without the voluntary signature and assent of the wife to the same." Under our constitution, the rule has been rejected, which prevails in some of the States, that a lien, however created, attaches to the homestead, but remains dormant during its occupancy, and comes into vitality on its cessation. While actual occupancy as a homestead is requisite to the claim of exemption, the owner's power of alienation, when so occupied, is unrestrained except by the requirement of the voluntary signature and assent of the wife, acknowledged and certified as provided by statute. A creditor has no right to subject the homestead, because the owner and occupant may have conveyed it to another, though the conveyance may be voluntary, or made under circumstances, which stamp it as fraudulent, being without injury to him. But a conveyance without such signature and assent of the wife is a nullity, conferring no rights, and if, on the execution of such conveyance, the owner abandons the homestead, the lien, *eo instanti*, attaches.—*Fellows v. Lewis*, 65 Ala. 343; *Alford v. Lehman*, 76 Ala. 526.

In construing constitutions, the form or manner of expression should not be regarded, so much as the nature and purposes of the provisions, the evil to be remedied, and the benefit

[Schuessler v. Dudley.]

to be secured—the end to be accomplished.—*Carroll v. State*, 58 Ala. 396. A State constitution should be interpreted in the light of the common law, when pertinent, and of its predecessors, if any. Exemptions of property from the payment of debts, which, in the absence of statutory or constitutional provisions, would have been subject, has been the policy of the State from its earliest organization; and from time to time statutes have been enacted enlarging the kind and *quantum* of the property exempted. Provisions were incorporated for the first time in the organic law, expressly declaring exemptions, in the constitution of 1868. These statutory and constitutional exemptions are founded in a humane and benevolent policy, looking to the promotion of the public weal, by protecting the wife and children against the improvidence of the husband and father, and securing to the family a home, a shelter from misfortune and adversity; and in furtherance of this beneficent policy, in which they originated and have been perpetuated, they have always received a liberal construction.

The security and protection of the homestead seem to have been an object of special care, and a special end to be accomplished. Though personal property is also exempted, the owner retains unrestricted power to transfer, or to create liens thereon; whilst as to the alienation of the homestead, preventive power is conferred on the wife—no mortgage or other alienation shall be valid without her voluntary signature and consent, whatever may be its form. A mere contract to alienate, though operating if it were valid as a conveyance of an equitable title, and having the voluntary signature and assent of the wife, does not give a right to insist upon a conveyance of the legal estate. The courts cannot compel the wife's performance.—*Jenkins v. Harrison*, 66 Ala. 345; *Phillips v. Stauch*, 20 Mich. 369. It will scarcely be controverted, that an equitable mortgage comes within the letter and spirit of the constitutional provision, and that no lien attaches to the homestead under such mortgage, which the courts will enforce, certainly without the signature and assent of the wife. The lien on the property of the tax-collector, which the statute declares shall be created by the execution of his official bond, is founded in *contract*, as much as that of a mortgage would be, and on this ground are based the right of subrogation, and the power of the court to enforce the lien. In *Knighton v. Curry*, *supra*, it is said: "The statute subjecting the property of a tax-collector to a lien for any default he may commit, the lien attaching on the execution of his official bond, is of the same dignity it would be, if in express words it was written as a stipulation of the bond. If so written, the bond would only repeat and declare its legal effect and operation. And if so written, in the absence of the statute, it

[Schuessler v. Dudley.]

would operate as an equitable mortgage, and as such a court of equity would enforce it."—*County of Dallas v. Timberlake,* 54 Ala. 403. A lien thus created and of such nature can have no more force or operation to deprive the owner of the homestead, than an equitable mortgage would have, or than if the lien, independent of the statute, were expressly stipulated in the bond. In Illinois, the statute provided, that the homestead shall be exempt from levy and forced sale for debts contracted after a stated time; "and no release or waiver of such exemption shall be valid unless the same shall be in writing, subscribed by such householder, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged." The bond of the tax-collector was also declared by statute to be a lien on all his real estate, within the county, at the time of filing thereof. Under these statutes, it was held that the lien can not be enforced as against the homestead; that "the homestead right is protected against all liens and sales, and against all modes of conveyance, whether by deed absolute or mortgage, unless it shall be released or disposed of in the mode prescribed by the act.—*Hume v. Gossett,* 43 Ill. 297. The constitution does not secure the homestead as a personal privilege of the debtor, but as an absolute right, essential to the well being of the household, of which he cannot be deprived, except by alienation with the voluntary assent of the wife, accompanied by her signature. By express provision, the exemption does not extend to a mortgage lawfully obtained, and executed in the mode prescribed. The section being general, conferring an immunity, and expressly excepting a specified lien, indicates the exclusion of all other liens, unless otherwise provided in the constitution.—*Expressum facit, cessare tacitum.* Moved by the frequent necessity of a waiver of exemptions, the framers of the constitution of 1875, while incorporating therein *verbatim* the homestead exemption as declared by the former constitution, provided another and additional mode of waiving the exemption, but still requiring the signature of the wife. In view of the policy of exemptions, and giving the constitutional provisions a liberal construction, the inference arises, that it was intended, the owner being a married man, that the household should not be deprived of the homestead, directly or indirectly, by being subjected to debts contracted by the husband, in any mode other than specifically prescribed, or otherwise authorized by the constitution. To this end, the voluntary signature and assent of the wife in the mode provided is essential. Under the constitution, the legislature could not declare a lien, to be created by the contract of the husband as security for a pecuniary liability, which the courts can enforce against the homestead, without regard to the

[Fearn, Ex'r, v. Ward, Adm'r.]

signature and assent of the wife. I do not wish to be understood as intimating a doubt of the correctness of the decisions, which hold, that a right of exemption can not be asserted, under the constitution and the statutes, against a judgment for a tort. No lien arises in such case until judgment and execution thereon. But I do not regard, as a logical sequence from this rule, that a lien, which does not necessarily depend on the commission of a tort, but is created by the execution and filing of the bond, and rests in contract, should be declared and enforced on a homestead, which the tax-collector has sold and conveyed before judgment is rendered against him in his official capacity—a homestead which can not be sold by virtue of the execution lien, and can be subjected only by enforcing a prior contractual lien. No reference is intended in this opinion to the exemption so far as enlarged by mere statutory provisions, as to which, it may be, different rules should be applied.