# Johnson *et al. v.* Hume.

*Bill in Equity to compel Transfer of Stock upon Books of Bank.*

1. *Power of husband over choses in action of wife; when right of ownership accrues.*—In States where the common law prevails, the husband is entitled, during coverture, to reduce

[Johnson *et al.* v. Hume.]

to his possession and ownership choses in action belonging to the wife at the time of marriage, or accruing to her during the continuance of the coverture; and when this right is exercised, the property so reduced to his possession becomes absolutely the property of the husband for any and all purposes.

2. *Same; same.*—The intention with which the husband acts in acquiring the possession of choses in action belonging to the wife, whether it is with the purpose to claim and exercise his marital right, should be considered in connection with the act of reducing them to possession, in determining whether or not the husband has become the absolute owner of such choses in action.

3. *Right of ownership by husband to wife's bank stock; not necessary to pass title to husband or his assignee that stock should be transferred on books of bank; bill in equity to compel transfer of stock on books.*—Where bank stock owned by a wife has, after endorsement by her in blank, been delivered to her husband, and in the exercise of his marital rights to such shares of stock, he transfers the stock to a third party as belonging to him, it is not necessary, in order to invest the title to the stock in the assignee, that it should have been transferred on the books of the bank; and upon the bank refusing to transfer the stock upon its books to the name of the assignee, he can maintain a bill in equity to compel the the bank thereto.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellee, W. G. Hume, against Beatrice C. Johnson and the Birmingham Trust & Savings Company and Paul H. Earle, its president, and J. W. Beard, its cashier.

The case made by the bill is that the defendant corporation was duly organized under the laws of Alabama, and that appellant, B. C. Johnson, resided in Alabama; that on the 28th day of February, 1895, the Birmingham Trust & Savings Company issued its certificate to appellant, B. C. Johnson, for 11 1-4 shares of stock; that appellant was at that time a married woman, the wife of J. T. Johnson, and that she and her husband both resided at Knoxville, in the State of Tennessee, and continued to reside there until the 6th day of April, 1895. A copy of the certificate, with the en-

dorsement thereon, is attached to the bill as an exhibit.

It is alleged that on the 6th day of April, 1895, Mrs. Johnson, in the presence of F. L. Bradley and her husband, J. T. Johnson, executed an assignment of the certificate in blank, and delivered the certificate to her husband, or permitted him to retain possession of the same.

It is then alleged that the endorsement was made for the purpose of enabling the husband, J. T. Johnson, to reduce the same to possession, or to enable him to sell and transfer, or pledge the same for money borrowed, or otherwise dispose of it. It is then averred that Johnson did thereby reduce the stock to possession. It 'is then alleged that J. T. Johnson, the husband, for a valuable consideration, assigned the stock to Robbins & Gammon as collateral security for money loaned by that firm to him; that afterwards, in June, 1897, Robbins & Gammon transferred and delivered the certificate to J. T. Johnson, who had redeemed and repurchased said certificate from said firm, and on the 16th day of January, 1898, J. T. Johnson, for a valuable consideration transferred and assigned to complainant Hume the certificate of stock, and sold and delivered the same to him, as shown by said certificate, and the several endorsements attached thereto; that on January 22d, 1898, complainant demanded of the Birmingham Trust & Savings Company the transfer of the stock, which was refused by said Trust & Savings Company.

Complainant then avers that he is advised that he is the true owner of the stock, and is entitled to the transfer of the same, and that the corporation refused to make the transfer. It is alleged in the bill that the corporation had earned and declared dividends, and that at the time he sold and transferred the certificate to complainant, J. T. Johnson assigned all the dividends which had accrued and been declared prior to the 10th day of January, 1898, and since the 6th day of April, 1895, and that complainant had made demand on the defendant corporation for an accounting and payment of all such dividends.

The complainant prayed that the corporation might be required to transfer the stock on its books, and to ac-

[Johnson *et al.* v. Hume.]

count for and pay the dividends accrued thereon.

After a demurrer interposed by the defendant had been overruled, the defendants then answered denying the allegations of the bill and on June 1, 1900, each of the defendants amended their answers, the corporation setting up that B. C. Johnson, the wife, was the owner of record of the stock, and without any notice or knowledge of complainant's claim, that the corporation had paid the dividends on the stock to her, up to the time of the service of the notice by the complainant. Mrs. Johnson denied the allegations of the bill, and in her amended answer set up that on the 7th day of April, 1895, her husband abandoned her and that on the 20th day of September, 1898, she filed a bill in the chancery court of Jefferson county for divorce, in which her husband appeared, and thereafter the case was submitted for final decree, and a final decree rendered on the 3d of March, 1899, dissolving the bonds of marriage. The answer denies that at any time during the coverture or at any time before the abandonment, the husband reduced, or attempted to reduce, to possession the shares of stock. The facts of the case, as shown by the evidence, are sufficiently stated in the opinion.

On the final submission of the case on the pleadings and proof the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered accordingly. From this decree the respondents appeal, and assign the rendition thereof as error.

ALEX. T. LONDON, for appellant.—At common law, marriage is only a qualified gift of the choses in action of the wife to the husband, and unless reduced to possession during the coverture, the title is not absolute, and the transfer by the husband to a third person for value only passes the husband's right to reduce it to possession.—*George v. Goldsby,* 23 Ala. 326, 332; Stewart's Husband and Wife, § 181; *Van Epps v. Van Dusen,* 4 Paige Chan. 64, 73.

In *Rice v. McReynolds, supra,* the court says that the reduction to possession of stock, is not by the collection of the money paid for the stock, or which it represents,

[Johnson *et al.* v. Hume.]

but by transferring the stock in his own name, with the purpose of making it his own, and I respectfully submit that the authorities are to the same effect.— *Rice v. McReynolds*, 8 Lea (Tenn.) 36; Stewart's Husband and Wife, §§ 179-181; *Winslow v. Crocker*, 17 Me. 29, 31; *Arnold v. Ruggles*, 1 R. I. 165, 178.

Only a registry of the stock is a reduction to possession.—*Wildman v. Wildman*, 9 Ves. Jr. 174; *Slaymake v. Bank*, 10 Pa. St. 373; Cook on Corporations, § 319.

At common law, the husband must during the coverture, have reduced to possession the choses in action of the wife or his marital rights do not attach.—2 Brickell's Digest, 74, § 75. And upon the dissolution of the marriage bonds, the choses in action remain the wife's property.—*Andrews v. Jones*, 10 Ala. 400, 422; *Legg v. Legg*, 8 Mass. 99.

JAMES E. WEBB, *contra*.—The complainant has the right to maintain the bill filed in this case to compel the transfer on the books of the company of the stock to his name.—*East Bir. L. Co. v. Dennis*, 85 Ala. 565; *Un. Nat. Bank v. Hartsell*, 84 Ala. 379; *Nelson v. Owens*, 21 S. R. 75; *Winter v. Montgomery Gas L. Co.*, 89 Ala. 549.

The following authorities show that when Johnson secured his wife to sign the endorsement, attested by two witnesses, he did reduce the stock to possession so that it became his own.—*Rice v. McReynolds*, 8 Lea. (Tenn.) 36; *Hardwarden v. Deyermeier*, 96 Tenn. 619; *Olmstead v. Keys*, 85 N. Y. 593; *Slaymaker v. Bank*, 10 Pa. St. Rep. 373.

When the husband once reduced to possession the defendant's choses in action, they became absolutely and entirely the property of the husband, and his right of ownership can be exercised over them in the same way as his ownership of any other personal property.—*Nolan's Appeal*, 23 Pa. St. 37; *Heard v. Lander*, 11 Bush (Ky.), 670; *Fritz v. Caldwell*, 21 Pa. St. 233; *Hartman v. Dowdell*, 1 Rawl's (Pa.) 280.

DOWDELL, J.—The appeal in this case is taken from a final decree rendered on a submission upon the pleadings and proof. Under the same state of facts as here shown by the pleadings and evidence, it was decided, in the case of *Birmingham Water Works Company v. Hume*, 121 Ala. 168, that the common law marital rights of the husband over the wife's personal property existed. The material inquiry in this case is whether the husband had reduced to possession the 11 1-4 shares of bank stock in question, which the wife owned and held at the time of the marriage, during the existence of the marriage relation, and before its dissolution by the decree of the chancery court.

Where this right of the husband exists, it is well settled that in its exercise no assent or concurrence on the part of the wife is necessary, and when so exercised, and the property reduced to his possession, it becomes absolutely his for any and all purposes. The intention with which the husband acts in acquiring the possession of the wife's property, that is to say, whether his purpose is to claim and exercise his marital right, should be considered in connection with his acts.

In the present case, however, concerning the question of purpose and intention in action, on the undisputed evidence, there can be no doubt that it was the husband's intention in what he did, to claim and exercise his marital right as to the 11 1-4 shares of stock. Moreover, if it were material, the intention of the wife that the stock should be and become the property of the husband, before and at the time she transferred the certificate by her endorsement, is clearly shown by the evidence.

There is nothing in the record to support the theory that what the husband did was with any intention or purpose on his part to acquire and hold possession of the stock in trust for his said wife. Nor anything to sustain the charge of fraud or undue influence in his conduct. The uncontroverted evidence shows that Mrs. Johnson, the wife, within a short time after the marriage, voluntarily assigned and delivered the certificate of stock to her said husband to be absolutely his, and that

he so received it. This action, however, could effectuate nothing more as to the ownership of the stock, than the husband might have accomplished by reducing the *chose* to his possession in the exercise of his common law marital right, but it does go to illustrate the subsequent acts of Mr. Johnson as to his purposes and intention. The principle defense is, that the stock not having been transferred on the books of the defendant bank before the dissolution of the marriâge bonds between J. T. Johnson, the husband, and his wife, B. C. Johnson, by the decree of the chancery court, there was no reduction to possession by the husband, and, therefore, the stock remained the property of Mrs. Johnson after the decree of divorce. And it is further urged that the complainant Hume, to whom J. T. Johnson had assigned and transferred the certificate of stock, was not a purchaser for value without notice.

The facts show that after J. T. Johnson received the certificate from his wife, he placed the same in the hands of Robbins & Gammon for *collection*, that they filled in the blank transfer on the back with their names, the blank being in the transfer signed by the wife when she delivered the certificate to her husband, and afterwards Robbins & Gammon retransferred to J: T. Johnson, when said J. T. Johnson sold and transferred by endorsement this certificate with other stock in other corporations to the complainant Humes for the gross sum of $2,700, taking the said Hume's notes therefor. Thereupon the said Humes requested the defendant bank to transfer the said 11 1-4 shares of stock to his name upon its books, which was refused, and this suit to compel said transfer was instituted. All of this transpired long before the institution of the divorce proceedings in the chancery court by Mrs. Johnson against her husband. It is further shown that Hume has paid $1,800 on his notes given for the purchase price of said stock, with other stock, and only $900 of said debt remains unpaid, though it is not shown when such payment was made, whether before or after the commencement of the divorce suit, but under our view of the case, we do not think this important.

In *Rice v. McReynolds,* 8 Lea (Tenn. Rep.) 36, it was said: "As to the bank stock, it being a chose of peculiar nature, the reduction to possession is effectual, not by the collection of money paid for the stock, or which it represents, but by transferring the stock in his own name with the purpose of making it his own, or more accurately, such transfer works the result, unless it be clearly shown that it was done in trust for his wife or for some other purpose than to vest the title in himself." "We take it to be too clear for argument that the husband having the right by virtue of his marriage, to reduce the stock to possession, had also the right to use the necessary means of effecting that right, and this with or without the consent of his wife." It may be here observed that in the case at bar, the domicile of the husband and wife was in the State of Tennessee, and was such at the time of the occurrences above stated as to the several transfers of the certificate.

In the case of *Rice v. McReynolds, supra,* which case was afterwards reaffirmed in *Hardwarden v. Deyermier,* 96 Tenn. 619, no reference is made to any transfer on the books of the corporation. In *Slaymaker v. The Bank,* 10 Pa. State Repts., where a wife owned certain bank shares before marriage, and her mother bequeathed her ten shares after marriage, in March, 1840, Skinner, the husband, transferred twelve of those held prior to the marriage to one Wirt, who in August, 1840, retransferred them to Skinner and wife, after which Skinner made a deed of assignment, and in 1842 the assignees sold and transferred to a stranger six of the shares which had been transferred to Wirt and by him retransferred—Mrs. Skinner died in 1847, leaving her husband surviving her, and the plaintiff Slaymaker was her administrator—the question being, whether the plaintiff as administrator was entitled to the shares so transferred by Wirt; the court gave judgment for the defendant bank. As to the remaining four shares which were transferred to Wirt and retransferred by him, the court said: "This transaction, we think, was such an assertion of ownership, such a reduction

of the stock into possession, as to bar the title of the wife to the moiety of the shares.  *  *  *  From this it follows, that as the four shares belonged to him at the time of the assignment, they pass to his assignees as already noted in Skinner's appeal against the bank, 262." The contention of counsel for appellant, that there could be no reduction to possession without a formal transfer of the stock on the books of the corporation, is opposed in principle to what was held in *Winter v. Gas Light Co.,* 80 Ala. 549, and in *Campbell v. Woodstock Iron Co.,* 83 Ala. 351, that as between the parties the legal title may pass without a transfer of the stock on the books of the corporation.

It is beyond question that the husband in the case before us, had the legal right to have the transfer made upon the books of the corporation, and that this right passed by the sale of the stock and transfer of the certificate by him to the complainant Hume. It is equally clear that it was the legal duty of the defendant bank to make said transfer on its books upon demand. This demand was made upon the defendant bank, and when made the complainant's right to have the transfer on the books of the stock to his name clearly existed, and existed at the time of the filing of his bill to compel the transfer. Under the authorities above cited, the intention of the husband to finally and absolutely appropriate the stock as his own being clearly shown, our conclusion is that his acts amounted to a reduction to his possession, and furthermore, that the complainant was entitled to relief. The averment in the bill of the pledge of the stock to Robbins & Gammon, was one of several different acts averred to show the principal fact—the reduction to possession by the husband. The failure to show the pledging as averred, the other acts amounting to a reduction to possession being proven as alleged, does not constitute a fatal variance between the allegations and the proof. J. W. Beard, as cashier of the defendant bank, was made a respondent to the bill. He was not a necessary party, and might very well have been dispensed with as a party. It is perfectly plain

that he had no interest as an individual to defend, and it is not to be seen how any interest or right of his, in the failure to bring the bill to issue as to him before final submission can possibly be effected.   The president of the bank, Earl, was also a respondent, and the bill was at issue as to him, and it was sufficient for the execution of the compulsory process of the court under the decree, that it be directed to him.

The decree will be arffimed.